**IN THE UNITED STATS DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| THE FEDERAL SAVINGS BANK, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:24-cv-5152 |
| | ) | |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| AHMAD JOHN AFZAL, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR INJUNCTIVE RELIEF

Plaintiff The Federal Savings Bank ("TFSB") by its attorneys, TottisLaw, brings this action against its former employee Defendant Ahmad John Afzal ("Afzal") based on Afzal's breach of contractual obligations owed to TFSB and misappropriation of TFSB's trade secrets and other confidential and proprietary information. In support of its claims, TFSB states as follows:

## NATURE OF THIS ACTION

1.      This case arises from Afzal's flagrant disregard of his duties under the employment contract he executed on May 20, 2022 in connection with his employment with TFSB. Specifically, Afzal has repeatedly violated non-disclosure and non-solicitation provisions of that contract since voluntarily leaving his position at TFSB and going to work for a competing mortgage lender. Afzal has done this even after TFSB reminded him of his contractual duties.

2.      This case also arises from Afzal's misappropriation and misuse of TFSB's trade secrets and other confidential and proprietary information relating to loans and mortgages originated by TFSB and its business more generally. Also in breach of duties owed to TFSB, Afzal has used these trade secrets and other confidential and proprietary information to poach TFSB's current and prospective customers.

3.      To address these flagrant violations by Afzal, TFSB now brings these claims and seeks both injunctive and legal relief.

## PARTIES

4.      TFSB is a privately held, federally chartered, FDIC-insured bank headquartered at 4120 W Diversey Ave, Ste C501, Chicago, IL 6063 and with another branch located in Lake Forest, Illinois.

5.      Afzal is an individual who, on information and belief, resides at 127 Trumpet Flower, Irvine, California 92618.

## JURISDICTION

6.      The Court has federal subject matter jurisdiction over Count II, a claim under the Federal Defend Trade Secrets Act, 18 U.S.C. §§ 1836 *et seq.* ("DTSA"). *See* 28 U.S.C. § 1331.

7.      This Court has supplemental jurisdiction over the other counts in this Complaint, because they form part of the same case or controversy as Count I. *See* 28 U.S.C. § 1367.

8.      The Court also has jurisdiction under 28 U.S.C. § 1332(c)(1), as complete diversity of citizenship exists between TFSB, a bank headquartered in Chicago, Illinois, on the one hand, and Afzal, a resident of California. The amount in controversy exceeds $75,000, exclusive of interest and costs.

9.      Personal jurisdiction and venue are proper in this judicial district because Afzal entered into an employment contract with TFSB on May 20, 2022 wherein the parties agreed "that any litigation between them must be brought in Cook County, Illinois and cannot be initiated in any other location, regardless of where Employee works or resides," and a substantial part of the events or omissions giving rise to the claims in this case occurred in this district. *See* 28 U.S.C. § 1391.

10.     TFSB, whose principal place of business is in Illinois, is damaged and continues to be damaged in Illinois by Afzal's conduct. Afzal's actions described herein were intentional and directed to TFSB, knowing it was located in Illinois.

## FACTS

### A.     THE FEDERAL SAVINGS BANK'S BUSINESS

11.     Founded in 2011, TFSB is a privately held, federally chartered bank. TFSB was founded to continue growing an established mortgage business and specializes in mortgage lending, including adjustable-rate and fixed-rate mortgages, FHA loans, Veteran Affairs home loans and other loan products. The bank also offers deposit products including certificates of deposit (CDs), checking accounts, and savings and money market accounts that earn interest.

12.     While headquartered in Illinois, as a federal-chartered institution, TFSB is able to provide home lending and other lending services in all 50 states and employs bankers across the country.

13.     Founded and operated by veterans, TFSB has a client-focus on U.S. veterans and about 30 percent of its lending services is directed to veterans.

### B.     AFZAL'S EMPLOYMENT AT TFSB

14.     Having previously worked there from July 2018 to January 2022, Afzal agreed to return to TFSB on May 20, 2022 and started back at the bank on May 31, 2022 as an Inside Commissioned Mortgage Banker. On April 17, 2023, Afzal was promoted to Vice President and continued in that role throughout the remainder of his employment with the bank.

15.     As part of his agreement to return to the bank, TFSB and Afzal entered into an employment agreement on May 20, 2022, entitled Terms of Employment (the "Employment Agreement"), a copy of which is attached as Exhibit A.

16. As both an inside commissioned mortgage banker and Vice President, Afzal was responsible for originating and facilitating the processing and closing of loan products and financing of residential real estate transactions on behalf of the TFSB's customers.

17. Per the Employment Agreement, Afzal was required to "comply with all Company policies and procedures, including, without limitation, those set forth in the Handbook, a copy of which has been provided to you; and promote and, consistent with the Duties, protect the Company's interests . . ." Employment Agreement, §2. The TFSB Handbook, in turn, states the following:

> As a result of an employee's access to the Bank's information systems, an employee may come into contact with confidential information, including but not necessarily limited to, marketing and operational plans, marketing programs, market studies, profitability statistics, customer lists, pricing information, preferential purchase and service contracts, corporate strategies, financial information, customer information and/or other proprietary information or trade secrets. As a condition of receiving access to the Bank's information systems, *employee acknowledges and agrees he/she will take all steps necessary to preserve the confidential nature of such information, avoid disclosures of confidential information to unauthorized persons*, and to report disclosure of confidential information to unauthorized persons to a supervisor immediately. *Upon termination of employment, employee agrees to return all confidential information in his/her possession and to take all steps necessary to protect the confidential nature of such information and avoid disclosure to unauthorized persons.*

18. The TFSB Handbook also prohibits "[a]ccessing, transmitting, downloading, uploading or otherwise misappropriating trade secrets, proprietary information, or confidential information belonging to the Bank or any other business entity" and "[a]ccessing, transmitting, or downloading copyrighted materials, financial information or other similar materials belonging to the Bank or any other business entity" unless the employee has "prior authorization."

19. As Afzal acknowledged in his Employment Agreement, during the course of his employment with TFSB, he would become familiar with the TFSB's operations, trade secrets, customers, along with other confidential information developed by and belonging to TFSB. Employment Agreement, §3(a). Afzal also acknowledged that such information, as well as TFSB's

4

personal relationships and goodwill with its customers and other professional entities, would enable Afzal to compete unfairly against the TFSB during or upon termination of his employment with the bank. *Id.*

20.     To protect against misuse, Afzal's Employment Agreement contained several terms to protect TFSB's confidential and proprietary information, trade secrets, customer relationships and associated good will.

21.     One such term states:

> From the date on which you execute this Term of Employment through the period ending 12 months after your employment with the Company terminates, regardless of the reason for such termination, you will not solicit, entice, cause, encourage, induce, facilitate, attempt to induce, aid or assist any other party or person in soliciting, inducing, facilitating, or attempting to induce: (1) any customer or prospective customer of the Company with whom you discussed potential loan options or scenarios in the twelve (12) months preceding termination of employment with the Company; (2) any person who provided confidential or proprietary information to the company within the preceding 12 months; or (3) any person who in the preceding 180 days closed a loan with the Company, to engage the services of another person or entity engaged in residential mortgage lending for the purpose of securing financing or refinancing of any residential mortgage loan.

Employment Agreement, §3(c). These reasonable restrictions on scope and time are narrowly tailored to protect TFSB's valuable business interests, including its trade secrets, other confidential and proprietary information, and customer relationships and associated goodwill.

22.     Section 3(f) of Afzal's Employment Agreement states:

> You agree that in the event of any threatened, intended or actual breach of this Term of Employment by you, the Company will suffer irreparable damage, the exact amount of which may be impossible to ascertain, and for which the remedies at law may be inadequate, and for those reasons you further agree that the Company shall be entitled, in addition to reasonable attorneys' fees, costs and remedies otherwise available to the Company at law or in equity, to injunctions, both preliminary and final, enjoining and restraining such threatened, intended or actual breach, and you irrevocably consent to the issuance of such injunctive relief by any court of competent jurisdiction.

Employment Agreement, §3(f).

23. Upon termination of his employment, Afzal was obligated to "deliver immediately to the Company all property belonging to the Company or any of its customers or employees, and all other property relating to their business(es) which may be in your possession or under your control." Employment Agreement, § 5(c). Afzal also "further agree[d] that you and anyone acting on your behalf will not keep copies of any reproducible items or extracts from them and will not download any information stored on any computer storage medium." *Id.*

24. Afzal and TFSB agreed that any legal disputes between them would be governed by Illinois law and be brought in Cook County, Illinois. Employment Agreement, §8.

25. Although Afzal's Employment Agreement contained an arbitration clause for certain disputes, the parties agreed to specifically exempt from arbitration the filing of any temporary restraining order or other litigation concerning a violation of Section 3 of the agreement, among other things. Employment Agreement, § 8(c)-(d).

26. As anticipated by Section 3(a) of his Employment Agreement, Afzal did see, work with, and generally become familiar with the TFSB's operations, trade secrets, and customers along with other confidential information developed by and belonging to TFSB.

27. Between May 2022 and January 2024, Afzal interacted with scores of TFSB's banking customers, providing mortgage lending services and facilitating mortgages and other loan products. He generated about a hundred mortgages and other loans totaling over $45 million.

28. Afzal was well compensated for his work at TFSB, earning in excess of $500,000 during 2023.

29. During his employment, Afzal possessed confidential and proprietary information regarding loans TFSB made to its customers and other confidential financial and trade secrets related to TFSB's mortgage business. This information included, among other things, customer credit analysis, loan risk analysis, mortgage and loan database information, names of customers, customer

lists and contact information, customer mortgage and loan histories, customer communication logs, customer credit analysis, loan risk analysis, the Leads Management System, Controlled Business Arrangement Agreements and Marketing Services Agreements with other banks, realtors, developers, title companies and other partnering entities, operational methods, strategic business planning, mortgage market studies, financial information and projections, and personnel data. Additionally, because he had management-level access to TFSB's systems, Afzal also had access to information that would allow him to:

- See every past or present funded loan for every TFSB customer in his division, which is TFSB's largest division covering California, Arizona, Texas, and Florida;

- Sort loans by closing dates, interest rates, and other key information to identify those loans that might best benefit from being refinanced; and

- Access and download information on TFSB customers future marketing approaches and the company's Leads Management System.

30.    On January 2, 2024, Afzal voluntarily resigned his position and his employment with TFSB terminated. Following that, Afzal became employed as a mortgage broker by Barrett Financial Group LLC, located in Gilbert, Arizona.

### C.    TFSB'S EFFORTS TO PREVENT DISCLOSURE OF CONFIDENTIAL INFORMATION

31.    TFSB operates in a defined and competitive industry and has used years of targeted marketing and client-relationship building, particularly toward U.S. veterans, to distinguish itself from its competitors and develop a unique reputation and loyal customer base within a highly-competitive market.

32.    Through the nationwide lending services it has provided for over two decades, TFSB has developed, and continues to amass and develop, substantial valuable data analysis, trade secret information, and other proprietary, competitively sensitive, and confidential information. As set forth in the Employment Agreement, and as with all TFSB Employees, Afzal understood and agreed that

his employment was contingent upon him complying with the covenants in Section 3 of the agreement and, by reference, the rules and policies set forth in the TFSB Handbook.

33.     As noted above, those covenants and the Handbook clearly require Afzal to maintain the privacy of customer-related confidential and trade secret information that is not known to others outside of TFSB and to return all TFSB documents, all to ensure that TFSB can maintain its distinct competitive advantage. Those covenants also clearly provided that their requirements would extend after the end of Afzal's employment with TFSB.

34.     By agreeing to the terms of Section 3 of the Employment Agreement and, by reference, the rules and policies set forth in the TFSB Handbook, Afzal acknowledged that he understood and agreed with the key role TFSB's client-related confidential information and trade secrets played in establishing and maintaining the banks' valuable relationships with its customers and the goodwill associated therewith, and that they are among the most valuable assets of TFSB's business. Section 3 of the Employment Agreement and the Handbook further clarify that TFSB includes these provisions in its employment agreements, including Afzal's, to protect its client-related confidential information and trade secrets.

35.     Beyond the covenants in its agreements with its employees like those in Section 3 of the Employment Agreement , TFSB takes pains to maintain the confidentiality of its client-related information, trade secrets, and other confidential and proprietary information through a variety of other means, including, but not limited to:

(a)     limiting access to confidential information on a need to know basis;

(b)     utilizing computer and database passwords;

(c)     transferring certain information only through secure file transfer protocol with encrypted passwords;

(d)     limiting access to offices;

(e)     monitoring who is given access to confidential information;

(f)     instructing personnel not to show confidential information to customers or persons outside TFSB;

(g)     entering into non-disclosure agreements with other banks, realtors, title companies and other business partners;

(h)     requiring all confidential and proprietary information to be used for business purposes only; and

(i)     maintaining customer mortgage and loan physical files in secured locations with limited authorized access.

36.     As a mortgage banker and Vice President, Afzal acquired confidential and proprietary information and trade secrets regarding all aspects of TFSB's business, including all of the various types and categories described above. This information is not known outside of TFSB, and only certain TFSB employees were authorized to access such information.

37.     Armed with wrongfully retained confidential and proprietary information and trade secrets from TFSB, a former TFSB employee (such as Afzal) could severely damage TFSB's competitive advantage in the marketplace and diminish or destroy valuable relationships TFSB has developed with its customers and/or business partners.

38.     Indeed, as noted above, the restrictive covenants recognize that any breach would lead to irreparable injury and that injunctive relief is warranted in the event of a breach. Employment Agreement, §3(f).

39.     As he acknowledged and agreed to in his Employment Agreement and the Handbook, TFSB entrusted its confidential and proprietary information to Afzal with the explicit understanding that he would at all times maintain the information's confidentiality, that he would use it only for TFSB's benefit, and that he would comply with his post-employment covenants of non-solicitation of customers and non-disclosure of confidential information.

**D.    AFZAL'S SOLICITATION OF TFSB CUSTOMERS, IN VIOLATION OF HIS EMPLOYMENT AGREEMENT**

40.    Afzal voluntarily left TFSB in January 2024 and almost immediately began violating the terms of his Employment Agreement and TFSB's trade secrets. On information and belief, Afzal retained TFSB's customer contact and loan history information (including confidential and trade secret information he downloaded to the spreadsheets discussed below) and used this information to attempt to poach TFSB's customers.

41.    TFSB first learned of Afzal's actions in late January 2024, after Afzal repeatedly contacted a TFSB customer named Nick located in Colorado.[1] Afzal contacted this customer regarding a new loan from his new employer to replace the customer's TFSB loan. Annoyed by the multiple phone calls from Afzal, Nick contacted TFSB, first alerting it to Afzal possibly soliciting TFSB customers and possibly using TFSB's confidential and proprietary information to do so, both in violation of the covenants of his Employment Agreement and the TFSB Handbook.

42.    Upon learning this, counsel for TFSB sent Afzal a letter via email reminding him of the covenants in his Employment Agreement and demanding that he "immediately cease and desist all contacts with the bank's prospective borrowers in violation of your employment contract with the bank." A copy of this letter is attached as Exhibit D.

43.    Neither Afzal nor his new employer, Barrett Financial Group, LLC, which was copied on the letter, responded to the letter.

44.    Though neither Afzal nor Barrett Financial Group chose to respond to TFSB's letter, TFSB did not hear from any other annoyed TFSB customers complaining about Afzal contacting them nor did it see any other indications of Afzal continuing to violate the terms of his Employment

---

[1] To preserve their identity and other confidential information, TFSB refers to the customers it alleges were contacted by Afzal by either their first or last name, but not both.

Agreement. Based on this, TFSB believed that the letter had the intended effect and that Afzal was complying with his obligations under the Employment Agreement.

45.     That changed in May 2024. On or about May 17, 2024, a TFSB mortgage banker contacted a TFSB customer named Joseph advising that the customer was eligible for a VA loan. Customer B, who had dealings with Afzal while Afzal was at TFSB, responded that "I recently refinanced with John [Afzal]. Would this be part of the VA Earl [sic, IRRL] program? John reached out to me after the 6 months and I completed the refi with him." This communication indicates that Afzal's unlawful solicitation and misuse of TFSB's trade secrets resulted in this lost business opportunity and thousands of dollars in future revenue. It also raises the possibility that Afzal failed to be clear with the customer for whom Afzal was working when he worked with him on the refinance.

46.     On May 22, 2024, another TFSB customer named Brenda told TFSB that she had been contacted by another banker at Barrett Financial Group, LLC, Bill Cunnington. Brenda had not previously worked with Afzal, but worked with another TFSB banker on five different loans. On information and belief, Afzal provided TFSB's confidential and proprietary information to Cunnington or used it to provide information to Cunnington that Cunnington then used to solicit this customer. For instance, Cunnington's initial message included information about how much the new loan would save the customer per month as well as information about refund of her escrow, information that likely was based on TFSB's trade secrets and other confidential and proprietary information provided by Afzal.

47.     On May 23, 2024, Afzal called another TFSB customer named Logan pitching a refinance of a Veterans Affairs mortgage. This customer also had not previously worked with Afzal and instead worked with another TFSB banker starting in October 2023. Now Afzal was proposing a new VA mortgage from his new employer to replace the mortgage that the customer had with TFSB. Afzal followed up with the following text message:

> Hello Mr. Logan, It was an honor speaking with you today sir. We are planning on finalizing your VA mortgage on the last week of June, therefore you will be skipping your July and August mortgage payments sir. No matter what keep making your payments until we get final word from the VA sir. Also please provide me with the following documents below. We will be in contact & have a blessed day!
>
> -Mortgage statement
> -Home owners insurance declaration page
> -Drivers license
>
> ***Please email them to me at Johnkim@saxtonmortgage.com***

48. Notably, Afzal's text included contact information for him indicating that he was working with Saxton Mortgage as a Senior Loan Officer. Despite that contact information including an email address for Afzal with Saxton Mortgage, the substance of Afzal's text message to the customer included an email address at saxtonmortgage.com for John Kim, not Afzal himself.

49. On information and belief, the John Kim referenced in Afzal's text message is another mortgage banker who worked at TFSB until he voluntarily ended his employment in November 2023 and who now works at Saxton Mortgage. While they both worked at TFSB, Afzal and Kim worked together, with Kim reporting to Afzal.

**E.    AFZAL'S MISAPPROPRIATION OF TFSB'S TRADE SECRETS AND OTHER CONFIDENTIAL AND PROPRIETARY INFORMATION, IN VIOLATION OF HIS EMPLOYMENT AGREEMENT.**

50. As noted above, since Afzal voluntarily ended his employment with TFSB in January 2024, TFSB has been contacted by several customers reporting that Afzal had contacted and solicited them to refinance their TFSB loans with his new employer or another financial institution, with most of these reports coming in late May 2024.

51. As a result of these communications, TFSB conducted an investigation in early June 2024 and discovered that Afzal's solicitations were not the only violations of his Employment Agreement as he had violated those terms, on multiple occasions, by using his management-level

access to download highly confidential information on TFSB customers and their mortgages without authorization.

52.     Afzal first did this on January 19, 2023, and then again on October 20, 2023.

53.     Each time, Afzal emailed an Excel spreadsheet from his TFSB email address to his personal Gmail address, ocmortgageboss@gmail.com. Copies of Afzal's emails to himself are attached as Exhibits B and C. The spreadsheets attached to those emails contained TFSB's detailed confidential and proprietary information and trade secrets about TFSB's customers and loan transactions that would enable him to better market to them in the future. To preserve the confidentiality of that information, the spreadsheets are not included in the exhibits.

54.     The spreadsheet Afzal attached to Exhibit B, his January 2023 email to himself, contains detailed proprietary customer information for more than 13,000 customers or prospective customers who reside in California. This information included customer names, contact information (addresses, telephone numbers and email addresses), prior loan information, including loan amounts, loan purposes, credit scores, customer debt information, and other confidential and customer sensitive information.

55.     The spreadsheet Afzal attached to Exhibit C, his October 2023 email to himself, contains detailed confidential information concerning 2023 loan transactions for more than 1750 customers. The information on this spreadsheet included customer names, contact information (addresses, telephone numbers, email addresses), customer credit score information, original loan amounts, loan to value ratios, interest rates, debt to value ratios, third party loan programs, loan types, loan purposes, title companies, other transaction information, and information about TFSB's work with the customers, including insights gained from that work. The spreadsheet attached to Exhibit C includes information regarding TFSB customer Nick and provides detailed information about his loan transaction with TFSB.

56. On information and belief, Afzal retained TFSB's trade secrets and other confidential and proprietary information, including the information he downloaded and emailed to himself, after he terminated his employment with TFSB in violation of the terms of his Employment Agreement.

57. On information and belief, also in contradiction of the terms of his Employment Agreement, Afzal used TFSB's trade secrets and other confidential and proprietary information to compete with TFSB after Afzal terminated his employment with TFSB.

58. On information and belief, Afzal has used its trade secrets and other confidential and proprietary information to successfully poach multiple TFSB customers and convince them to refinance their TFSB loans either with Afzal's new employer Barrett Financial Group or with other mortgage brokers and bankers working with Afzal.

59. According to TFSB's recent investigation, at least 15 TFSB customers Afzal assisted with loan transactions while employed by TFSB have refinanced their loans with third parties (including several with Barrett Financial Group) following Afzal's resignation. This investigation also indicates that customer Joseph refinanced his loan with United Wholesale Marketing, a company that regularly works with Barrett Financial Group on loans, and on information and belief, with the assistance of Afzal. All told, TFSB estimates that the value of the TFSB customers' loans to be in excess of $5 million.

60. Having made reasonable attempts to persuade Afzal to staunch his unlawful use and disclosure of TFSB's valuable confidential and proprietary customer information and trade secrets only to see Afzal again ignore and flagrantly violate his statutory and contractual obligations, TFSB now brings this action to protect its legitimate business interests.

## CAUSES OF ACTION

## COUNT I: FEDERAL DEFEND TRADE SECRETS ACT

61. TFSB incorporates by reference Paragraphs 1 through 60 as if fully set forth herein.

62. The actions of Afzal as described above, constitute violations of one or more provisions of the Federal Defend Trade Secrets Act, 18 U.S. Code § 1836(b) ("DTSA").

63. DTSA applies because TFSB's trade secrets are related to mortgage and loan products and services used in, and intended for use in, interstate commerce. The mortgage and loan products and services to which the trade secrets relate are offered by TFSB to its customers and prospective customers across the United States.

64. By engaging in the conduct described here, Afzal has misappropriated and unlawfully used and/or disclosed TFSB's trade secrets related to mortgage and loan products or services used in, or intended for use in, interstate commerce.

65. The internal proprietary information and trade secrets to which Afzal had access the entire time he was employed by TFSB include customer credit analysis; loan risk analysis; mortgage and loan database compilations containing confidential and customer sensitive information, including names of customers, contact information, credit ratings, credit analyses, loan amounts, interest rates, loan to value ratios, and debt to value ratios; customer mortgage and loan histories; customer communication logs; Controlled Business Arrangement Agreements and Marketing Services Agreements with other banks, realtors, developers, title companies, and other partnering entities; TFSB's marketing strategies, operational methods, and strategic business planning; mortgage market studies; financial information and projections; and personnel data.

66. The various items of information to which Afzal had access and which he made use of in his employment are trade secrets under DTSA. For over two decades, TFSB expended substantial time, energy, money and ingenuity in compiling this information based on its own efforts and communications with TFSB's mortgage and loan customers, business partners such as other banks, realtors, and title companies, and others.

67. TFSB has taken reasonable measures to keep its trade secret information secret by, among other things:

    (a)    requiring employees who have access to such information to sign confidentiality agreements;

    (b)    promulgating confidentiality and information security policies;

    (c)    limiting the disclosure and distribution of such information on a need to know basis;

    (d)    requiring that such information be saved on password protected computers, networks, servers and databases; and/or

    (e)    utilizing non-disclosure agreements when engaging in discussions with business partners such as other banks, realtors and title companies.

68. Additionally, to further protect its trade secret information, immediately after learning of Afzal's wrongful conduct, TFSB demanded that Afzal cease and desist any and all use or disclosure of TFSB's proprietary information and trade secrets.

69. TFSB's client-related trade secret information is sufficiently secret to derive independent economic value due to not being generally known to, and not being readily ascertainable through proper means, by other persons who can obtain economic value from its disclosure and use, such as TFSB's competitors.

70. Without authorization, Afzal misappropriated and used and/or disclosed TFSB's trade secrets in a willful and malicious manner and with a deliberate intent to injure TFSB and improve his own and his new employer's financial gain.

71. TFSB communicated or otherwise provided access to its trade secrets to Afzal in confidence. At the time of disclosure, Afzal knew that the trade secrets were acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secrets and limit the use of the trade secrets.

72. As he acknowledged and agreed to in his Employment Agreement, Afzal can obtain economic value for the disclosure and use of TFSB's trade secrets, for example, by avoiding years and

millions of dollars in investment that it took TFSB to develop the trade secret information and customer relationships, permit Afzal's new employer to be better positioned to compete against TFSB without investing the time and money TFSB has invested, and to convert or attempt to convert TFSB's mortgage and loan customers to those of a competitor for his own or another employer's financial gain.

73.     Despite TFSB's efforts to caused Afzal to cease and desist, Afzal has continued his unlawful use of TFSB's trade secrets.

74.     As a consequence of the foregoing, TFSB has suffered and will continue to suffer irreparable harm, injury and loss.

75.     Pursuant to DTSA, actual or threatened misappropriation of trade secrets can be enjoined.

76.     Unless enjoined, TFSB will continue to suffer irreparable harm that cannot be remedied through money damages.

77.     As a direct and proximate result of the conduct of Afzal, TFSB is entitled to actual damages in an amount to be determined at trial. The acts and conduct of Afzal were and continue to be willful and malicious, justifying an award of exemplary damages and attorneys' fees.

**COUNT II: ILLINOIS TRADE SECRETS ACT**

78.     TFSB incorporates by reference Paragraphs 1 through 77 as if fully set forth herein.

79.     As noted in Count I, TFSB has confidential and proprietary information that constitutes trade secrets under the Illinois Trade Secrets Act, 75 ILCS 1065 *et seq.* ("ITSA"). Such information derives independent value from not being generally known to TFSB's competitors. Further, such information is not readily ascertainable through proper means by TFSB's competitors.

80.     TFSB undertook reasonable efforts and instituted reasonable precautions to protect the confidentiality of its proprietary, confidential and trade secret information.

17

81.     Afzal has misappropriated and wrongfully used and/or disclosed TFSB's trade secrets in violation of ITSA.

82.     Afzal's misappropriation and wrongful use and/or disclosure exposes TFSB to immediate and irreparable harm for which there is no adequate remedy at law.

83.     Afzal's misappropriation and wrongful use and/or disclosure has also caused and will continue to cause TFSB to suffer monetary damages and legal costs to be determined at trial.

## COUNT III: BREACH OF CONTRACT

84.     TFSB incorporates by reference Paragraphs 1 through 60 as if fully set forth herein.

85.     As a condition of his employment and/or continued employment, Afzal entered into the Employment Agreement, a valid and binding contract (which incorporated by reference rules and policies set forth in TFSB's Handbook), which provided in relevant part that:

(a)     he was not to disclose or use any of TFSB's confidential information for the benefit of himself or another;

(b)     he was prohibited, within certain parameters, from soliciting TFSB's customers or prospective customers;

(c)     he was to return all TFSB's property and information upon termination of employment; and

(d)     disclosure of TFSB's confidential and proprietary information and trade secrets would cause TFSB irreparable harm that would entitle TFSB to injunctive relief.

*See* Exhibit A, §3.

86.     TFSB fully performed and met the obligations required of it by Afzal's Employment Agreement.

87.     Afzal has violated the non-solicitation and non-disclosure obligations under Section 3 of his Employment Agreement by using TFSB's confidential and proprietary information and trade secrets in attempts to poach, sometimes successfully, TFSB's current and prospective customers. Specifically, on information and belief, Afzal has (i) solicited TFSB customers or prospective

customers with whom he had discussed potential loan options or scenarios in the twelve months preceding his termination of employment with the Company; (ii) solicited TFSB customers or prospective customers who have provided confidential or proprietary information to TFSB within the preceding 12 months of his termination; and (iii) solicited TFSB customers or prospective customers who in the preceding 180 days of his termination closed a loan with the TFSB to engage the services of one or more competitors engaged in residential mortgage lending for the purpose of securing financing or refinancing of any residential mortgage loan.

88.     Afzal ahs also violated the TFSB's Handbook's prohibition against "[a]ccessing, transmitting, downloading, uploading or otherwise misappropriating trade secrets, proprietary information, or confidential information belonging to the Bank" and its requirement that Afzal preserve and maintain the confidentiality of TFSB's proprietary information and trade secrets.

89.     As a direct, foreseeable, and proximate result of these breaches by Afzal, TFSB has suffered, and will continue to suffer, substantial losses, the precise amount and value of which are incalculable.

90.     Upon information and belief, Afzal will continue to breach the Employment Agreement and TFSB Handbook rules unless and until he is forced to stop doing so by this Court.

91.     As a result of Afzal's breaches of his Employment Agreement and Handbook rules, TFSB is entitled to injunctive relief to prevent further misappropriation or wrongful use or disclosure of its confidential information and trade secrets for which TFSB has no adequate remedy at law, and it is entitled to its attorneys' fees and costs for enforcing its provisions and legitimate confidentiality interests. *See* Exhibit A at §3(f) (expressly setting forth that TFSB is entitled to recover reasonable attorneys' fees and costs arising out of or in connection with any breach by Afzal of Section 3 of his Employment Agreement).

## COUNT IV: TORTIOUS INTERFERENCE WITH
## PROSPECTIVE BUSINESS ADVANTAGE

92.     TFSB incorporates by reference Paragraphs 1 through 60 as if fully set forth herein.

93.     TFSB had and has a reasonable expectancy associated its provision of mortgage and loan services to an expansive and profitable customer base in North America.

94.     Afzal had direct knowledge of TFSB's expectancy and investment associated with establishing its North American customer base.

95.     Afzal intentionally and unjustifiably interfered with TFSB's expectancy by, among other things, using TFSB's confidential client-related information and trade secrets to induce current and prospective customers to enter into mortgages or loans or refinance mortgages or loans with Afzal's new employer in substitution for mortgages or loans offered or provided to the customers by TFSB.

96.     As a result of its interference with TFSB's expectancy, Afzal has interfered with TFSB's relationships with its customers or prospective customers and the goodwill associated with such relationships.

97.     As a direct and proximate result of Afzal's actions and interference, TFSB was and is currently being deprived of mortgage and loan business opportunities to which it is entitled.

98.     Afzal's interference, as alleged herein, was willful and malicious and done in reckless disregard for TFSB's rights, and therefore entitle TFSB to an award of exemplary and punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, The Federal Savings Bank respectfully requests that this Court:

(a)     Enter an order declaring Afzal to have (1) breached Section 3 of his Employment Agreement; (2) misappropriated TFSB's trade secrets in violation of DTSA and ITSA; and (3) tortiously interfered with TFSB's prospective business advantage.

20

(b)     Enter order(s) temporarily, preliminarily, and permanently requiring that:

(1)     Defendant Afzal and all parties in active concert or participation with him who receive actual notice of the Order, by personal service or otherwise, be enjoined from retaining, utilizing or disclosing TFSB's confidential, proprietary and/or trade secret information;

(2)     Afzal and all parties in active concert or participation with him who receive actual notice of the Order, by personal service or otherwise, be enjoined from breaching his the restrictive covenants of Section 3 of Afzal's Employment Agreement.

(3)     Afzal is required to identify any TFSB information in his possession, custody or control or accessible to him (or in the possession, custody or control of any of his agents or attorneys or accessible to them) and to turn over to TFSB all originals and all copies of files, data and information removed from or belonging to TFSB (including journals, logs, diaries and other personal memoranda that may reference, include or discuss TFSB's information), in electronic and physical or hard copy form;

(4)     Afzal be ordered to turn over to a TFSB representative, for inspection, all devices (or, for any cloud-based or remote storage locations, all passwords or necessary access information for such storage locations) that are currently used or previously used by her to store or access TFSB company information and/or to which he has at any time downloaded or saved any TFSB company information, including but not limited to any such hard drives, flash drives, phones, tablets, computers, cloud-based media or other storage device or location and be enjoined from using or disclosing the same;

(5)     Afzal be ordered to permit direct physical access by a TFSB representative, to all computers, personal communications devices, laptops, tablets, or other storage devices in his possession, custody, or control and all passcodes/passwords for those devices, within ten (10) days of the Court's entry of the Order, for forensic examination by a third party expert and to confirm deletion of Company documents and information.

(c)     Enter an order holding Afzal is liable for TFSB's attorneys' fees and costs; and

(d)     Enter order(s) awarding such other actual damages exemplary damages and punitive damages and further relief as the Court deems appropriate.

Dated: June 20, 2024

Respectfully submitted,

**THE FEDERAL SAVINGS BANK**

By:_____/s/ *Max A. Stein*_____
                One of its attorneys

Max A. Stein (ARDC No. 6275993)
Keith M. Stolte (ARDC No. 6244848)
Monica Thompson (ARDC No. 6181455)
TottisLaw
401 N. Michigan Ave., Suite 530
Chicago, IL 60611
mstein@tottislaw.com
kstolte@tottislaw.com
mthompson@tottislaw.com