**IN THE UNITED STATS DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| THE FEDERAL SAVINGS BANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:24-cv-5152 |
| | ) | |
| AHMAD JOHN AFZAL, | ) | |
| | ) | |
| Defendant. | ) | |

**DECLARATION OF JOHN T. CALK**

My name is John T. Calk and I am Chairman and Chief Executive Officer of The Federal Savings Bank ("TFSB"), headquartered at 4120 W Diversey Ave, Suite C501, Chicago, IL 60639. I make this Declaration in support of a Motion for a Temporary Restraining Order and Preliminary Injunction that TFSB is filing together with a complaint against Ahmad John Afzal, a former executive of the bank. If called upon to do so, I could competently and truthfully testify to the facts set forth below. Unless stated otherwise, the following facts are based on my own personal knowledge.

**A. TFSB's Business And Customer Relationships.**

1. TFSB is a privately held, federally chartered, FDIC-insured bank specializing in mortgage lending, including adjustable-rate and fixed-rate mortgages, FHA loans, and Veteran Affairs home loans. The bank also offers deposit products including certificates of deposit (CDs), checking accounts, and savings and money market accounts that earn interest.

2. TFSB was founded and operated by veterans and focuses on U.S. veterans with about 30 percent of its lending services directed to veterans. Although headquartered in Chicago, TFSB offers its mortgage and loan products throughout the United States.

3. TFSB's continued business success depends on its customer relationships and so TFSB expends considerable time, effort, and money initiating, developing, and maintaining its customer relationships. This allows TFSB to preserve its competitive advantage.

4. TFSB does not publicly disclose its customers' names or contact information, loan information, credit and risk analysis, or other highly confidential and proprietary information. TFSB also treats the terms and conditions of TFSB's mortgages and other loans to its customers as confidential. In addition, information regarding customers' mortgage and other loan terms is available internally at TFSB on a need-to-know basis. TFSB maintains this confidentiality, in part, through non-disclosure agreements with personnel who have access to confidential information.

5. TFSB's efforts to protect the valuable information it develops about its customers and potential customers has enabled TFSB to develop and maintain a strong reputation in the marketplace and engendered substantial goodwill with its customers. These continuing efforts and this goodwill are critical to TFSB's success, and they result in TFSB gaining repeat business from its established customer relationships.

**B. Confidential And Trade Secret Information.**

6. To conduct its mortgage and loan business and meet customers' needs, TFSB has developed and relies upon certain trade secrets and other confidential and proprietary information, including, but not limited to:

- mortgage and loan database compilations containing confidential and customer sensitive information, including names of customers, contact information, credit ratings, credit analyses, loan amounts, interest rates, loan to value ratios, and debt to value ratios;
- customer mortgage and loan histories;
- customer communication logs;
- customer credit analysis;
- loan risk analysis;

- Leads Management System;
- Controlled Business Arrangement Agreements and Marketing Services Agreements with other banks, realtors, developers, title companies, and other partnering entities;
- TFSB's marketing strategies, operational methods, and strategic business planning;
- financial information and projections; and
- personnel data.

For purposes of this Declaration, these items are referred to as TFSB's "Confidential Information and Trade Secrets."

7. TFSB goes to great lengths to ensure that its Confidential Information and Trade Secrets are sufficiently protected. TFSB's efforts include, but are not limited to:

- limiting access to confidential information on a need to know basis;
- utilizing computer and database passwords;
- transferring certain information only through secure file transfer protocol with encrypted passwords;
- limiting access to offices;
- monitoring who is given access to confidential information;
- instructing personnel not to show confidential information to customers or persons outside TFSB;
- entering into non-disclosure agreements with other banks, realtors, title companies and other business partners;
- requiring all confidential and proprietary information to be used for business purposes only; and
- maintaining customer mortgage and loan physical files in secured locations with limited authorized access.

Several of TFSB's security requirements governing employee use of the bank's information systems and for treating Confidential Information and Trade Secrets, both in electronic and paper form, are

set forth in the TFSB Handbook. These portions of the TFSB Handbook, pages 54-57, are attached to my Declaration as Exhibit 1.

**C. Afzal's Employment At TFSB.**

8. Afzal first worked for TFSB from July 2018 until he voluntarily left TFSB in January 2022. Afzal decided to return to TFSB and accepted a position as an Inside Commissioned Mortgage Banker on May 20, 2022 and started back at the bank on May 31, 2022.

9. A little less than a year after his return to the bank, on April 17, 2023, Afzal was promoted to Vice President. Afzal continued in that role until January 2024, when he again voluntarily ended his employment.

10. As part of his agreement to return to the bank, TFSB and Afzal entered into an employment agreement on May 20, 2022, entitled Terms of Employment (the "Employment Agreement"). A copy of the Employment Agreement is attached as Exhibit A to the Complaint being filed by TFSB in this matter. To my knowledge, TFSB has substantially performed all its obligations of the Employment Agreement.

11. Afzal's Employment Agreement is substantively similar to agreements that TFSB enters into with employees who will have access to its Confidential Information and Trade Secrets. TFSB also has a Handbook that contains rules regarding TFSB's Confidential Information and Trade Secrets. The rules in TFSB's Handbook, which is incorporated by reference in Section 2 of the Employment Agreement, specifically prohibits employees from "[a]ccessing, transmitting, downloading, uploading or otherwise misappropriating trade secrets, proprietary information, or confidential information belonging to the Bank."

12. As both an inside commissioned mortgage banker and Vice President, Afzal was responsible for originating and facilitating the processing and closing of loan products and financing of residential real estate transactions for TFSB's customers. Between May 2022 and January 2024,

Afzal interacted with scores of TFSB's banking customers, in particular providing mortgage lending services and facilitating mortgages and other loan products. He generated about a hundred mortgages and other loans totaling over $45 million.

13. Afzal was well compensated for his work at TFSB. In 2023 alone, he earned in excess of $500,000 in compensation.

14. While employed by TFSB, Afzal had access to TFSB's Confidential and Trade Secret Information. Notably, because he had management-level access to TFSB's systems, Afzal also had access that would allow him to (i) view every past or present funded loan for every TFSB customer in his division, which happened to be TFSB's largest division, comprising the states of California, Arizona, Texas and Florida); (ii) sort loans by closing dates, interest rates, and other key information to identify those loans that might best benefit from being refinanced; and (iii) access and download information on TFSB customer future marketing approaches and the company's Leads Management System.

15. On January 2, 2024, Afzal voluntarily resigned from TFSB. I understand that he became employed by Barrett Financial Group located in Gilbert, Arizona shortly thereafter.

**D. Afzal's Misappropriation Of TFSB's Trade Secrets and Solicitation of TFSB's Customers.**

16. We first learned of Afzal breaching his Employment Agreement in late January 2024, after Afzal repeatedly contacted a TFSB customer in Colorado. He contacted the customer to pitch a new loan to replace the loan that the customer had from TFSB. The Customer was so annoyed by the multiple phone calls from Afzal he contacted TFSB, alerting us to the possibility that Afzal was using TFSB's confidential and proprietary information in violation of the covenants of his Employment Agreement and the rules in the TFSB Handbook.

17. Shortly after learning this, our attorney sent Afzal a letter via email (with a copy to Barrett Financial Group) reminding him of the covenants in his Employment Agreement and

demanding that he "immediately cease and desist all contacts with the bank's prospective borrowers in violation of your employment contract with the bank." A true and correct copy of that letter is attached to TFSB's Complaint as Exhibit D.

18. Though neither Afzal nor Barrett Financial Group responded, we believed that our counsel's letter had the intended effect and that Afzal began complying with his obligations under the Employment Agreement since we did not hear from any customers or see any other signs of Afzal was continuing to breach his obligations.

19. From February through late May 2024, we had no further indication that Afzal was continuing to use TFSB's Confidential Information and Trade Secrets to solicit customers.

20. However, on May 17, 2024, one of our bankers reached out to a TFSB customer, named Joseph, with a marketing pitch to refinance his loan. Afzal had worked with Joseph while at he was employed by TFSB. The customer responded by informing the banker that "I recently refinanced with John [Afzal]. . . . John reached out to me after the 6 months and I completed the refi with him." A true and correct copy of this text message exchange, redacted to protect the customer's contact information, is attached to my Declaration as Exhibit 2.

21. On May 22, 2024, another customer, named Brenda, informed another TFSB banker that she had been contacted by a William Cunnington of Barrett Financial Group pitching a refinance of her current loan with TFSB. Although Afzal had not worked with Brenda, another TFSB banker had worked with her on five different loans in the past. The customer indicated that Mr. Cunnington had information about her loan with TFSB. A true and correct copy of the email from this customer, again redacted to protect the customer's contact information, is attached to my Declaration as Exhibit 3.

22. Then, on May 23, 2024, Afzal called another TFSB customer, named Logan, to pitch a refinance of a Veterans Affairs mortgage. The customer had not previously worked with Afzal but

instead worked with another TFSB banker starting in October 2023. Afzal proposed a new VA mortgage from his new employer to replace the mortgage that this third customer had with TFSB. He followed up with a text to the customer stating the following:

> Hello Mr. Logan, It was an honor speaking with you today sir. We are planning on finalizing your VA mortgage on the last week of June, therefore you will be skipping your July and August mortgage payments sir. No matter what keep making your payments until we get final word from the VA sir. Also please provide me with the following documents below. We will be in contact & have a blessed day!
>
> -Mortgage statement
>
> -Home owners insurance declaration page
>
> -Drivers license
>
> ***Please email them to me at Johnkim@saxtonmortgage.com***

A true and correct copy of this text is attached to my Declaration as Exhibit 4.

23. Afzal's text to this customer included contact information for him indicating that he was working with Saxton Mortgage as a Senior Loan Officer. Despite that contact information including an email address for Afzal with Saxton Mortgage, the substance of Afzal's text message to this third customer included an email address at saxtonmortgage.com for John Kim, not Afzal himself. We believe that John Kim referenced is another mortgage banker who previously worked at TFSB until he voluntarily resigned in November 2023 and who now works at Saxton Mortgage. While they both worked at TFSB, Afzal and Kim worked together, with Kim reporting to Afzal.

24. Based on these contacts, we conducted an investigation that revealed that, during his employment at TFSB, Afzal used his management-level access to download and email to his private email account detailed and confidential information on TFSB customers and loan transactions on at least two occasions. On both occasions, Afzal emailed an Excel spreadsheet containing TFSB's Confidential and Trade Secret Information about thousands of TFSB's customers and loan

transactions. True and correct copies of the emails that Afzal sent himself are attached to TFSB's Complaint as Exhibits B and C.

25. The spreadsheet Afzal attached to Exhibit B, which he emailed to himself on January 19, 2023, contains detailed proprietary customer information for more than 13,000 customers or prospective customers who reside in California. This information included customer names, contact information (addresses, telephone numbers, and email addresses), prior loan information, including loan amounts, loan purposes, credit scores, customer debt information, and other confidential and customer sensitive information.

26. The spreadsheet Afzal attached to Exhibit C, which he emailed to himself on October 20, 2023, contains detailed confidential information concerning 2023 loan transactions for more than 1,750 TSFB customers. The information on this spreadsheet included customer names, contact information (addresses, telephone numbers, and email addresses), customer credit score information, original loan amounts, loan to value ratios, interest rates, debt to value ratios, third party loan programs, loan types, loan purposes, title companies, other transaction information, and information about TFSB's work with the customers, including insights gained from that work. This spreadsheet includes detailed information about the loan transaction between TFSB and the customer who had contacted the bank in late January concerning Afzal's multiple call to him.

27. Contrary to his obligations in the Employment Agreement, Afzal never returned the spreadsheets he downloaded and emailed to himself when he left TFSB's employ in January 2024.

28. The information contained in the two spreadsheets enables Afzal to better target and market his new employer's mortgage and loan products to our customers and potential customers in the future. Based on our recent internal investigation, at least 15 TFSB customers whom Afzal assisted with loan transactions while employed by TFSB have refinanced their loans with third parties, including several with Barrett Financial Group, following Afzal's resignation. This investigation also

indicates Joseph, the customer that TFSB contacted on May 17, 2024, refinanced his loan with a company that we believe regularly works with Barrett Financial Group on loans (United Wholesale Marketing), and, we believe, with the assistance of Afzal. All told, we estimate that the value of the 15 TFSB customers' loans to be in excess of $5 million.

29. Through his access to TFSB's Confidential Information and Trade Secrets (including the spreadsheets we know he misappropriated), Afzal knew of TFSB's ongoing relationships with these customers, especially because of his knowledge that TFSB's customers often enter into successive mortgage and refinancing agreements with TFSB.

30. We reasonably believe that TFSB has been, and will continue to be, damaged by the loss of valuable ongoing customer relationships with mortgage and loan borrower's wrongfully solicited by Afzal through the use of our trade secrets, as well as lost revenue and profits as a result, including income from lost refinancing opportunities.

I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge, information and belief, formed after a reasonable inquiry.

Executed this 20th day of June, 2024, at Chicago, Illinois.

/s/ John T. Calk
John T. Calk